Miguel A. CONTRERAS,
et al., Plaintiffs,

v.

Tom RIDGE, Secretary, Department of
Homeland Security, Defendant.

No. CIV.A. 02–0923(JR).

United States District Court,
District of Columbia.

Feb. 26, 2004.

David J. Shaffer, Shaffer, Rapaport & Schmidt, LLP, Ronald A. Schmidt, Garvey Schubert Barer, Washington, DC, for Plaintiffs.

Kaija Clark, Stuart A. Licht, Karen Kathleen Richardson, Shayna Susanne Cook, U.S. Department of Justice, Washington, DC, for Defendant.

### *MEMORANDUM ORDER*

ROBERTSON, District Judge.

The eight named plaintiffs in this case are or were special agents of the United States Customs Service ("Customs Service"), a bureau of the defendant, the Department of Homeland Security.[1] They seek to represent a class of current and former Customs Service agents bringing allegations of pattern and practice discrim-

ination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The Department of Homeland Security moves for summary judgment.

### *Background*

The named plaintiffs are (1) Miguel A. Contreras, a GS–13 Senior Special Agent in the Office of Investigations in Yuma Arizona; (2) Ruben E. Gonzalez, a GS–15 Associate Special Agent in Charge in the Office of Investigations in Houston, Texas; (3) E. William Velasco, a retired GS–15 Special Agent; (4) John Yera, a GS–14 Special Agent with the Cybersmuggling Center in Fairfax, Virginia; (5) Ricardo Sandavol, a GS–14 Special Agent and Resident Agent in Charge in the Office of Investigations in El Centro, California; (6) Stephan Mercado–Cruz, a GS–14 Special Agent and Group Supervisor in the Office of Investigations in El Centro, California; (7) Frank Almonte, a GS–13 Special Agent in the Office of the Special Agent in Charge at John F. Kennedy Airport; and (8) Ramon Martinez, a GS–13 Special Agent in the Baltimore–Washington Office of Investigations.

Only Miguel Contreras pursued a class action complaint at the administrative level. He first contacted an EEOC counselor about class claims on January 9, 1995, and subsequently filed a formal class action administrative charge raising claims "on behalf of himself and all similarly situated past, present and future Hispanic special agents at [the Customs Service]," Compl. of Class Discrimination, dated March 23, 1995 ["Class Administrative Charge"], at 2,

---

1. At the time the action was filed, the Customs Service was a bureau within the United States Department of the Treasury. On March 9, 2003, most of the Customs Service's special agent workforce became part of the Bureau of Immigration and Customs Enforcement in the Department of Homeland Security. *See* Def.'s Mem., at 3. The defendant will be referred to as "Department of Homeland Security" or "the Department."

and seeking to represent "254 employees of Hispanic national origin assigned to the position of GS–1811 Special Agent ..., Grades 12–15, in the [Customs Service's] Office of Internal Affairs and the Office of Investigation." *Contreras v. Rubin*, Appeal No. 01961671, 1998 WL 253533 (E.E.O.C. May 11, 1998) ["May 11, 1998 EEOC Decision"], at 1. Contreras alleged that the Department discriminated against Hispanic special agents on the basis of national origin when it:

- denied them promotions for which they had applied and "continued to seek applicants or filled the positions with persons from a different class," despite the fact that "members of the class [were] qualified to seek such promotions";

- carried out "policies and programs ... [that] limit[ed], segregate[d] and classif[ied]" Hispanic special agents in a manner that adversely affected their status as employees;

- applied merit promotion policies and programs that had an adverse impact on Hispanic special agents in "areas of recruitment of applicants, hiring, initial job assignments, transfers, promotions, retention and training," and disparately impacted them;

- gave Hispanic special agents who are fluent in Spanish "a disproportionately large share of unfavorable work assignments including Spanish–English translation, wiretap monitoring, temporary duty, undercover work, geographical transfers and assignment to dangerous and otherwise undesirable posts";

- "failed and refused to assign Hispanics to positions and locations which provide promotional opportunities";

- precluded Hispanic special agents "from obtaining the training and diverse work experience which constitute the basis upon which applicants for promotion are evaluated";

- "failed to accord proper recognition and weight to the expertise and experience that Hispanic agents have obtained[, causing] Hispanic agents [to be] underrepresented within [the Customs Service's] Offices of Investigation and Internal Affairs, particularly at the higher grades," and to have to "spend more time in grade before being promoted to the next higher grade than ... non-Hispanic agents";

- paid Hispanic special agents "less than similarly situated non-Hispanic agents";

- did not compensate Hispanic special agents "for their use of a foreign language"; and

- subjected Hispanic agents "to discrimination with respect to the terms and condition of employment, including awards, training and imposition of discipline."

Class Administrative Charge, at 4–5.

The Department asked the EEOC to assign an administrative judge to handle Contreras's complaint on April 12, 1995. On November 20, 1995, the administrative judge issued an opinion finding that the complaint was not subject to dismissal under any of the provisions of 29 C.F.R. § 1614.107 and that it met the prerequisites of 29 C.F.R. § 1614.204(a)(2), which governs class complaints. On December 21, 1995, the Department issued a final agency decision rejecting the administrative judge's recommendation to process Contreras's administrative complaint on behalf of a class, determining that the class complaint was untimely and that it did not meet the prerequisites of a class complaint.

On May 11, 1998, the EEOC vacated the agency decision and certified the class complaint. The EEOC found the class allegations to be timely, explaining:

> The agency dismissed all allegations, with the exception of training, promotions and lateral transfers, as untimely on the grounds that appellant "did not timely raise any allegations of his own experiences with respect to hiring, job assignments, retention, or the use of language skills which occurred within forty-five (45) days of [the date he contacted an EEO counselor]." The agency reads our regulations with regard to the certification of a class complaint too narrowly. The record shows that appellant addressed agency practices with regard to awards, discipline, and language skills during EEO counseling and that appellant had individual EEO complaints concerning discipline and performance evaluations. The AJ ordered that appellant's individual complaints be held in abeyance pending a decision as to certification of the class complaint.... Also, we note that discriminatory practices that assign work duties based on language skills are ongoing actions. For these reasons, therefore, we find that allegations concerning promotions, training, assignments, awards, discipline, and work assignments based on language skills were timely raised.

*Id.*, at *3. On October 22, 1999, the EEOC denied the Department of Homeland Security's request for reconsideration and ordered the Department to process the complaint as a class action. On June 22, 2000, the administrative judge issued an order defining the class as: "All Special Agents (Criminal Investigators), job series 1811, grades 12 through 15, of Hispanic national origin, employed in the Office of Investigations and the Office of Internal Affairs of the United States Customs Service."[2] The parties then proceeded with the case until Contreras withdrew his administrative complaint and filed the instant class action complaint on May 10, 2002.

In this Court, the plaintiffs seek class relief for eight allegations of national origin discrimination, including discrimination in connection with: (1) competitive positions and promotions; (2) transfers, assignments and other career-enhancing opportunities; (3) undercover and other undesirable work; (4) discipline; (5) awards and bonuses; (6) foreign language proficiency awards; (7) training; and (8) harassment and hostile work environment. Class relief is also sought for allegations of retaliation, allegedly arising from plaintiffs' reporting of discrimination.

### Analysis

Defendant's motion rests on two theories, either one of which defendant asserts would be dispositive if successful: (1) failure to exhaust administrative remedies; and (2) failure to make out a prima facie case of discrimination.

1. *Exhaustion of Administrative Remedies*

a. *Is the question to be decided de novo?*

Plaintiffs offer the threshold contention that an administrative exhaustion inquiry

---

**2.** The administrative judge's definition of the class is narrower than the class on behalf of which this complaint has been asserted, *see* Compl., at 2 ("Plaintiffs, Hispanic Special Agents of the United States Customs Service . . . bring this action, on their own behalf, and on behalf of a class of all other Hispanic Special Agents in the GS–1811 series who have been employed as GS–1811's at any time from, at least January 1, 1974 to the present, or in the alternative from January 1, 1977 to the present."). The implications of this will be resolved at another time.

is unnecessary because the EEOC has already resolved this issue in their favor. For this argument, they rely upon the EEOC's May 11, 1998 order vacating the Department's decision that the class complaint was untimely and its explicit finding of timeliness. Plaintiffs argue that the EEOC decision is entitled to deference, and that, absent a showing that it was "one that Congress clearly would not have sanctioned," Pls.' Opp'n, at 15, the Department is not entitled to upset it here.

▮▮▮ When a plaintiff takes a Title VII complaint to court before an administrative agency has made a merits determination, however, the government is not bound by the EEOC's adverse finding of timeliness, and the adverse finding is not entitled to deference. *See, e.g., Wade v. Sec'y of the Army,* 796 F.2d 1369, 1376–77 (11th Cir.1986) (holding that, when the agency has made no finding on the merits and failure to exhaust has been alleged, the district court must determine whether the employee has complied with regulation requirements without deference to the agency or complaint examiner's findings); *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1017 (1st Cir.1979); *Boarman v. Sullivan,* 769 F.Supp. 904, 908 (D.Md.1991). This rule is grounded in the statutory provision that permits a federal employee to bring a Title VII action to federal court, 42 U.S.C. § 2000e–16(c): a federal employee, "if aggrieved ... by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of [Title 42]." The "civil action" referred to in § 2000e–16(c) is a "de novo 'civil action' equivalent to that enjoyed by private-sector employees." *Chandler v. Roudebush,* 425 U.S. 840, 863, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *see also Timmons v. White,* 314 F.3d 1229, 1233 (10th Cir.2003). As the D.C. Circuit has explained (in another

context), "de novo" ordinarily means "a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion." *Doe v. United States,* 821 F.2d 694, 697–98 (D.C.Cir.1987) (addressing whether the term "de novo" permitted a plaintiff to bring a de novo action under the Privacy Act challenging a Department of State decision not to amend the plaintiff's records); *see also Timmons,* 314 F.3d at 1236 ("[I]t is undisputed that a federal agency is bound by a finding of discrimination in a civil action to enforce an EEOC decision[, but that does not support] the proposition that a federal agency is similarly bound when the employee elects to 'seek relief from the district court in the same manner as a state or private-sector employee.'" (citation omitted)). Nonetheless, the EEOC's findings on the issue of timeliness are not "rendered irrelevant [by the fact that] federal employees [are] permitted to seek de novo review in district court because '[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo.'" *Timmons,* 314 F.3d at 1234–35 (quoting *Chandler,* 425 U.S. at 863 n. 39, 96 S.Ct. 1949).

The Department is not bound in this Court by the EEOC's adverse determination on the timeliness issue, and I will review it de novo.

### b. *Were plaintiffs' claims exhausted?*

At oral argument, on January 12, 2004, the Department conceded that one of Contreras's eight claims of discrimination—the claim of discriminatory denial of promotions—was administratively exhausted. As to the other seven discrimination

claims and the claim of retaliation, however, the Department's position is either that the class representative failed to contact an EEOC counselor within 45 days of the alleged discrimination or that the claims were not raised in the class administrative complaint.

■■■ "Exhaustion of administrative remedies by at least one named plaintiff is a condition precedent to sustaining a class action under Title VII." *Thomas v. Reno*, 943 F.Supp. 41, 43 (D.D.C.1996) (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395 (D.C.Cir. 1988), *aff'd*, 159 F.3d 637 (D.C.Cir.1997) (unpublished table decision)). The exhaustion must be accomplished "in a timely fashion," *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir.1996), and, for a federal employee's administrative complaint to be timely, the employee "must initiate contact with a[n EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "A federal complaint does not have to be a mirror image of the administrative complaint," *Kent v. AVCO Corp.*, 815 F.Supp. 67, 69 (D.Conn.1992) (citations omitted), but the Title VII claims are "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)). "This requirement is satisfied if (1) there is a reasonable relationship between the allegations in the EEO charge and the civil complaint; and (2) the civil claim can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Mack v. Strauss*, 134 F.Supp.2d 103, 109 (D.D.C.2001) (citation

omitted), *aff'd*, case No. 01–5122, 2001 WL 1286263 (D.C.Cir. Sept. 28, 2001).

Contreras first contacted an EEOC counselor with a class claim on January 9, 1995, three days after he learned that he had not been selected for the vacant position of Supervisory Criminal Investigator. The EEOC counseling report states that

[t]he complaint was triggered when Special Agent Miguel Contreras was not selected for [the] Supervisory Criminal Investigator ... position that he applied for .... The complainant stated that a White male was selected for the position.... The complainant didn't know how he ranked on the selection register that was referred to the selecting official or even if a selection register was referred. However, the complainant did not feel that this information was relevant in this case. Because in the opinion of the complainant the system used to select individuals for promotion and transfer has been so corrupted that it discriminates against Hispanics and other minorities.

Compl. of Class Discrimination, Report of EEO Counseling, dated March 15, 1995 ["EEOC Counseling Report"], at 3. The report explains that "Hispanic special agents of the U.S. Customs Service believe that they are being discriminated against in the areas of[:] promotions, reassignments, details, job training and language skills," *id.*, at 3, and that the discriminatory allocation of work assignments to Hispanic agents "den[ies] them opportunities for promotion." *Id.*, at 5. As a specific "example of how the system has dealt with Hispanic agents to prevent them from being promoted to a higher level," the report explains that

[when t]he complainant was recommended for [a] position [in Mexico] and his name was submitted to the Headquarters Office of Investigation ... [t]he

[Special–Agent–in–Charge in Detroit] blocked the transfer, stating that the complainant had only been in the Detroit office for thirteen (13) months and the office needed his ability to speak and interpret Spanish. The complainant feels that this action has adversely impacted his career development [i]n that the knowledge[,] skills and experience he would have gained [from] the position would have prepared him for promotion to the next level.

*Id.*, at 4. There is little subtlety to these allegations, and the class counseling report clearly establishes that Contreras complained, on behalf of Hispanic agents with Spanish language capability, about discrimination in promotions, as well as transfers, training, assignments, and other opportunities related to promotions.

Contreras's formal class administrative charge, filed on March 23, 1995, echoes these allegations, stating that

[the Customs Service's] repeated failure to promote Mr. Contreras to a supervisory position is the result of its discriminatory practices by which Hispanic agents such as Mr. Contreras, who are fluent in Spanish, receive a disproportionately large share of unfavorable work assignments including Spanish–English translation, wiretap monitoring, temporary duty, undercover work, geographical transfers and assignment to dangerous and otherwise undesirable posts. In addition, [the Customs Service] has failed and refused to assign Hispanics to positions and locations

which provide promotional opportunities.[3]

Class Administrative Charge, at 5. As a result of the Customs Service's alleged discriminatory policies and programs, the charge concludes that "Mr. Contreras and similarly situated Hispanic agents spend more time in grade before being promoted to the next higher grade than do non-Hispanic agents." *Id.* According to the charge, therefore, the "aforementioned specified [Customs Service's] practices constitute a pattern and practice of unlawful discrimination based on National Origin." *Id.*

 Because Contreras contacted an EEOC counselor three days after he was denied a promotion opportunity, and because both the EEOC class counseling report and the class administrative charge repeatedly allege discriminatory denial of promotions to Hispanic agents, I find that the claim of discriminatory denial of promotions was timely exhausted. The class claims that are related to the denial of promotions claim—concerning transfers, assignments, and other career-enhancing opportunities, undercover and other undesirable work, discipline, awards and bonuses, and training—are like or reasonably related to the timely exhausted promotions claim because they concern work opportunities that would credential or position Hispanic agents for promotions. Any EEOC investigation of the denial of promotions claim would necessarily involve investigation into the building blocks of promotion. Accordingly, because there is

---

3. The charge also explains that

Because of the aforementioned practices, Mr. Contreras and similarly situated Hispanic special agents have been precluded from obtaining the training and diverse work experience which constitute the basis upon which applications for promotion are evaluated.

In addition, [the Customs Service] has failed to accord proper recognition and weight to the expertise and experience that Hispanic agents have obtained. For these reasons, Hispanic agents are underrepresented within [the Customs Service's] Offices of Investigation and Internal Affairs, particularly at the higher grades.

Class Administrative Charge, at 5.

a reasonable relationship between the class claim of denial of promotions and the class claims of transfers, assignments, and other career-enhancing opportunities, undercover and other undesirable work, discipline, awards and bonuses, and training, these claims are also appropriate for adjudication.

The claims of harassment/hostile work environment and foreign language proficiency awards, however, were not properly asserted to the EEOC counselor or in the administrative charge or were not timely asserted, and, because of failure to exhaust, are not properly before the Court.[4]

■ The EEOC counseling report and administrative charge do not even suggest that Contreras is raising a harassment or hostile work environment claim on behalf of the class. The words are not mentioned, nor does the content of either document give any indication of a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citations omitted).

■ As for the foreign language proficiency awards claim, although both the class counseling report and administrative charge mention discrimination in compensation for use of language skills, there is no indication in the record that this claim was brought to the EEOC counselor's attention in a timely manner—i.e. within 45 days of an alleged discriminatory compensation action. Nor is there any indication as to how this claim is like or reasonably related to the exhausted claim of discriminatory denial of promotions. Instead, this claim concerns the manner in which Spanish language proficiency is tested, or in which the foreign language proficiency compensation statute makes compensation awards. It is clear from both the counseling report and the administrative charge that this claim is in addition to, or separate from, the denial of promotions and other related claims. This claim is therefore precluded.

■ The Department's argument that the class retaliation claim should be dismissed on administrative exhaustion grounds, *see* Def.'s Mem., at 39, is reject-

---

4. In their responsive memorandum, the plaintiffs argue that the tolling principles set forth in *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), are "fatal to all of Defendants' arguments with regard to exhaustion of administrative remedies, particularly those based on the failure to contact an EEO counselor within 45 days," and toll the claims of the class from 1988 to the present. Pls.' Opp'n, at 15–17. This tolling argument is premised on the notion that this class action can piggyback onto the administrative complaint and subsequent class action of *Gonzalez v. Brady*, 136 F.R.D. 329 (D.D.C.1991) (filed on May 20, 1988, on behalf of Hispanic series 1811 special agents and other Hispanic employees of the Customs Service and raising similar complaints to those raised here). However, these cases do not permit this type of piggybacking, and the statute of limitations period for this class action will not be tolled by Gonzalez. *See Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) ("The courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does *not* toll the limitations period for additional class actions by putative members of the original asserted class." (emphasis in original; internal quotation marks and citation omitted)); *see also, e.g., Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir.1987); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir.1987); *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985); *Fleck v. Cablevision VII, Inc.*, 807 F.Supp. 824, 826 (D.D.C.1992).

ed. "[I]t is generally accepted that the exhaustion of administrative remedies doctrine does not apply to claims based on alleged retaliation." *Baker v. Library of Congress*, 260 F.Supp.2d 59, 66 n. 4 (D.D.C.2003). Claims of retaliation must, "[a]t a minimum ... arise from the administrative investigation that can reasonably be expected to follow the underlying charge of discrimination," *Park*, 71 F.3d at 907 (internal quotation marks and citation omitted), but whether or not the class retaliation claim is such a claim is a matter of fact that cannot be decided without a fuller record.

### 2. *Prima Facie Case*[5]

The Department of Homeland Security argues that, even if they were administratively exhausted, plaintiffs' claims of denial of promotions, transfers, assignments, undercover and other undesirable work, discipline, and training must be dismissed because Contreras, the only plaintiff to have exhausted them on behalf of the class, cannot establish a prima facie case as to each one under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework.

■■■ This argument misses the mark. The complaint at issue is brought on behalf of a class, and seeks classwide relief for pattern and practice discrimination. "Although there is little case authority discussing summary judgment motions in pattern-or-practice cases, ... [p]resumably ... such motions must be analyzed in light of the orders of proof peculiar to pattern-

or-practice cases." *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1108–09 (10th Cir.2001). In contrast to a disparate treatment discrimination claim, as to which the courts apply "the familiar test of *McDonnell Douglas*," *Russell v. Principi*, 257 F.3d 815, 817–18 (D.C.Cir.2001), "[d]uring the first stage of a pattern-or-practice case, ... a summary judgment motion (whether filed by plaintiffs or defendants) must focus solely on whether there is sufficient evidence demonstrating that defendants had in place a pattern or practice of discrimination during the relevant limitations period." *Thiessen*, 267 F.3d at 1109; *see also Taylor v. D.C. Water & Sewer Auth.*, 205 F.R.D. 43, 46 (D.D.C.2002) ("Suits alleging pattern or practice claims are typically divided into two phases, a liability phase and a damages phase. In the first phase, the plaintiffs must establish through a common method of proof that the employer is liable to the class for the pattern or practice of discrimination. This is usually done with a combination of statistical evidence regarding the defendant's treatment of the class as a whole and anecdotal testimony from individual class members regarding specific acts of discrimination."). As the Tenth Circuit explained:

> Until the first stage is resolved, we question whether it is proper for a court to consider summary judgment motions regarding second stage issues (i.e., whether individual plaintiffs are entitled to relief). Even assuming, *arguendo*, such motions can properly be considered

---

5. The Department of Homeland Security argues that many of plaintiffs claims should be dismissed on the grounds that plaintiffs have failed to assert adverse employment actions *and/or* have failed to establish a prima facie case of discrimination. Because the adverse employment action requirement is subsumed in the prima facie case inquiry, the Court will address them concurrently. *See, e.g., Stella v.*

*Mineta*, 284 F.3d 135, 145 (D.C.Cir.2002) ("This court ... requires a plaintiff to state a prima facie claim of discrimination by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999))).

prior to resolution of the first stage, it is clear they would not be analyzed under the typical *McDonnell–Douglas* framework.

*Thiessen,* 267 F.3d at 1109 (citing *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 357–61, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

■ The Department has not yet contested the plaintiffs' argument that it had in place a pattern or practice of discrimination with regard to Hispanic agents. However, it is clear that whether plaintiffs' class claims of discrimination can survive summary judgment does not depend on Contreras's ability to state a prima facie case.

Having considered the defendant's motion for summary judgment and the opposition thereto, it is this,

**ORDERED** that the motion for **summary judgment [22] is granted in part and denied in part.**