Reginald **MOORE** et al., Plaintiffs,

v.

Michael **CHERTOFF**, Defendant.

No. CIV.A. 00–953RWRDAR.

United States District Court,
District of Columbia.

March 30, 2006.

Jennifer I. Klar, John Peter Relman, Relman & Associates, PLLC, Deborah L. Boardman, E. Desmond Hogan, Sarah M. Berger, Hogan & Hartson, L.L.P., Washington, DC, for Plaintiffs.

Marina Utgoff Braswell, U.S., Attorneys Office, Benton Gregory Peterson, Assistant United States Attorney, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Plaintiffs, ten black current and former special agents of the United States Secret Service, filed this employment discrimination action individually and on behalf of a putative class of black special agents against the Treasury Secretary alleging that the Secret Service has engaged in a pattern and practice of racial discrimination against black agents dating back to 1974. In a Memorandum Opinion and Order issued on October 24, 2004 ("the October 24 Opinion"), defendant's motion to dismiss the complaint was denied with respect to the individual non-promotion claims of several agents and granted with respect to all other claims, both individual claims and class claims. On November 5, 2004, plaintiffs filed a motion for clarification of the October 24 Opinion, seeking guidance on whether they were entitled to refile all of the dismissed claims after administratively exhausting them. Plaintiffs also have filed a motion to amend their complaint in order to add previously dismissed and new claims and supplemental facts. They assert that the defendant is equitably estopped from opposing as untimely any new or refiled claims. Defendant opposes the motions, arguing futility and prejudice with respect to all claims except the non-promotion class claim.

Defendant has not been equitably estopped from asserting the untimeliness of new or dismissed claims. After having taken discovery, plaintiffs have not demonstrated any affirmative misconduct by the defendant relied upon by the plaintiffs that prevented or discouraged plaintiffs from timely filing their pre–1999 claims with the Secret Service. Because the doctrine of vicarious exhaustion with respect to a timely class claim of non-promotion is broad enough to encompass forms of discrimination that affect the building blocks of promotion, plaintiffs' class claims regarding discriminatory performance evaluations; discriminatory transfers, assignments, and other career-enhancing opportunities; discriminatory assignment to undercover work; discriminatory hiring practices; discriminatory testing; discriminatory disciplinary policies and practices; and discriminatory awards and bonuses can be deemed vicariously exhausted by their now properly exhausted non-promotion class claim. Therefore, plaintiffs' motion to amend the complaint will be granted in part and denied in part. Plaintiffs' pre–1999 class claims may not be pled as they are untimely, but plaintiffs' class allegations that

can be deemed vicariously exhausted may be pled. The Department of Treasury will not be added as a defendant. Plaintiffs are directed to refile an amended complaint in accord with this Memorandum Opinion and Order no later than May 1, 2006.

## BACKGROUND

### I. FACTUAL BACKGROUND

Plaintiffs allege enduring and systematic discrimination dating back to 1974 by the Secret Service against black agents, recounting a history of non-selections, desultory recruitment efforts, exclusion from choice assignments, and general harassment. (*See* Compl. ¶¶ 12, 21–25, 34.) In addition, plaintiffs maintain that the Service engaged in a two-decade long game of cat and mouse, consistently promising to address the concerns of black agents when confronted with their concerns, but never doing so. With regard to the Service's many unfulfilled promises, plaintiffs allege the following.

In 1974, black agents sent Director H.S. Knight a memorandum outlining numerous concerns about the treatment of black agents in the Service. (*Id.* ¶¶ 6–9.) Plaintiffs do not allege they received any responses to this communication from Knight or any other representative of the Service. In 1977, the agents sent a letter to Knight in which they outlined largely the same concerns and recounted two instances of white agents using racial slurs in the presence of black agents. (*Id.* ¶¶ 10–13.) Knight responded by sending a letter to all Service employees urging them to refrain from using racial slurs and charging supervisors with dealing with racist comments promptly and firmly. (*Id.* ¶ 14.)

In 1987, representatives of black agents met with Assistant Director of the Office of Investigations Kevin Houlihan and Acting Assistant Director of Protective Operations George Opfer and reiterated the concerns of racial discrimination they spelled out in their 1977 letter. (*Id.* ¶¶ 15–21.) Houlihan responded by letter to Special Agent Donald Tucker, one of the representatives of the black agents. In the letter, Houlihan agreed to address and intensify efforts at recruiting and hiring, recognized the need for "consultations with minority agents" and agreed to meet on a regular basis, agreed to raise the issue of assignments to the Special Agent in Charge, mentioned that the Service was reconsidering its agent career tracking, and assured the agents that each SAC had a mandate to deal with his personnel fairly. (*Id.* ¶¶ 22–24.) Houlihan did not offer any concrete proposals. (*Id.* ¶ 25.) Later that year, Tucker received a low performance evaluation that he felt was retaliation for his earlier efforts to raise issues of racial discrimination with Houlihan and Opfer. Tucker then wrote to Houlihan that he intended to file a complaint against the Service, and responded to Houlihan's letter summarizing it as "basically stat[ing] that [Houlihan] will back the supervisor—right or wrong—against the employee." (*Id.* ¶ 26–27.)

In 1989, representatives of the black agents sent a memorandum to Director John Simpson detailing the same concerns as in previous correspondences. (*Id.* ¶ 28.) Plaintiffs do not allege any responses to this communication from Simpson or any other representative of the Service. In 1992, John Magaw became the director of the Service and the black agents sent a "statement to [him] outlining concerns about recruitment and hiring, promotions, assignments, training and discrimination/disparate treatment." (*Id.* ¶ 35.) Plaintiffs do not allege they received any responses to this communication from Ma-

gaw or any another representative of the Service.

In their proposed amended complaint, plaintiffs offer two additional communications between management of the Service and the black agents in support of their claim of equitable estoppel. In the early 1990s, plaintiffs allege that Magaw attended the National Organization of Black Law Enforcement convention, appeared receptive to minority concerns, and promised Special Agent Alonzo Webb that he would investigate the treatment of black agents. (Am.Compl.¶ 63.) Then, in 1998, Deputy Director Bowen met with Webb and expressed concern about the number of minorities enrolled in Special Agent Training Classes. Bowen stated that "something has to be done" and indicated that he intended to address the problem. (*Id.* ¶ 64.)

## II. PROCEDURAL HISTORY

The defendants moved to dismiss plaintiffs' complaint. The October 24 Opinion denied defendant's motion to dismiss with respect to the individual non-promotion claims of several agents and granted the motion with respect to all other claims. (October 24 Opinion at 2–3.) On November 5, 2004, plaintiffs filed a motion for clarification, seeking guidance on whether they were entitled to amend their complaint here to reallege "all[1] claims alleged in [their] initial complaint [filed] in [this] court" after refiling with the EEOC and exhausting the claims dismissed on October 24, 2004. (Pls.' Mot. For Clarif'n at 1, 5.) After refiling and exhausting their class claims with the EEOC in accordance with

*Martini v. Fed. Nat'l Mortgage Ass'n,* 178 F.3d 1336 (D.C.Cir.1999), plaintiffs moved to amend their complaint in order to reallege all of the previously dismissed class claims, add facts supporting existing claims, add claims of discrimination occurring after May 2000, and add the Department of Treasury as a defendant. (Pls.' Mot. to Amend at 1; Pls.' Reply at 14–17.) Plaintiffs argue that the October 24 Opinion held that defendant was equitably estopped from arguing that new or refiled claims should be barred as untimely, and that plaintiffs may re-raise all of the dismissed claims and any claims that were not included in the original complaint upon exhaustion of administrative remedies. (Pls.' Reply at 4.)

Defendant opposes the motions, disputing that any finding of equitable estoppel was made, and arguing futility and prejudice. Specifically, defendant contends that (I) the addition of the previously dismissed class claims, except the non-promotion class claim, would be futile because they were previously dismissed with prejudice by the court, (ii) the addition of claims predating the filing of the complaint would be futile because no contact was made with an EEO counselor within 45 days of each alleged incident, (iii) the addition of claims postdating the original complaint would be futile because no contact was made with an EEO counselor within 45 days of each alleged incident, (iv) the Department of Treasury is not a proper defendant, and finally (v) the government would be prejudiced by the late addition of pre-lawsuit claims and the class claim filed two months after plaintiff indicated to the court that it

---

**1.** Defendant argues that the individual claims that were dismissed on October 24, 2004 were dismissed with prejudice as they had never been first filed and administratively exhausted with the Secret Service. Plaintiffs confirmed at the February 22, 2006 hearing that they refiled with the EEOC and exhaust-

ed the dismissed class claims, but not the dismissed individual claims (*see* Pls.' Reply in Supp. of Pls.' Mot. to Amend ("Pls.' Reply") at 2), and that they do not seek to revive those dismissed individual claims here. The issue concerning the dismissed individual claims, then, is moot.

would file the claim. (Def.'s Opp'n to Pls.' Mot. to Amend at 7–23; Def.'s Surreply in Supp. of Opp'n to Pls.' Mot. to Amend at 15–17.) Defendant does not dispute that the non-promotion class claim of Agent John Turner is properly before the court.

Plaintiffs' November 2004 motion to clarify the October 24 Opinion will be granted principally to address issues raised regarding the proposed amended complaint.

## DISCUSSION

### I. EQUITABLE ESTOPPEL AND TOLLING

 "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Equitable tolling allows a plaintiff to bring a claim outside of the prescribed time period "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C.Cir. 1998). Equitable estoppel "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Id.* Courts, including the D.C. Circuit, have emphasized that the defendant must engage in affirmative misconduct in order for equitable estoppel to apply. *See id.* at 1368 (stating that an employer promising an employee a "fair and impartial investigation," advising an employee to "hang tight," and assuring an aggrieved employee that "it's not over yet" would be insufficient to give rise to equitable estoppel); *Thomas v. Eastman Kodak, Inc.*, 183 F.3d 38, 53 (1st Cir.1999) (noting that in the 1st Circuit no equitable tolling is avail-

able absent affirmative misconduct by an employer); *Navarro v. United States*, 104 F.Supp.2d 96, 104 (D.P.R.2000) (stating that employer must actively mislead the plaintiff who must rely on the misconduct to his detriment).

 Plaintiffs here argue that the statute of limitations should be tolled from January 1, 1974 until the date the complaint was filed in this court because the "Secret Service repeatedly assured plaintiffs that it would take action" to correct discriminatory practices, but failed to do so. (Compl.¶ 40.) Plaintiffs do not contend that they were unaware of the existence of their claims. On the contrary, plaintiffs advance the argument that they were aware of their claims but refrained from bringing them in light of promises made to them by the Service. (*Id.*) Therefore, plaintiffs advance an argument of only equitable estoppel and not equitable tolling.

Although plaintiffs have now had the benefit of discovery, they have not come forth with sufficient facts to support the inference that affirmative misconduct by the defendant should stop him from asserting untimeliness of plaintiffs' claims. Equitable estoppel will apply only where an employer has engaged in affirmative misconduct. *Currier*, 159 F.3d at 1367. Plaintiffs, however, identify no assurances or promises made or any affirmative conduct by the Service that might have misled plaintiffs in response to plaintiffs' 1974 memorandum to Knight, 1989 memorandum to Simpson, or the 1992 statement to Magaw. With regard to the 1977 letter to Knight, plaintiffs allege only that Knight responded with a letter to all employees addressing the use of racial slurs. While this response might have been woefully inadequate to address the concerns of the black agents, it did not amount to active

misconduct misleading the plaintiffs. The Houlihan letter to Donald Tucker in 1987 might have offered a plausible claim of affirmative misconduct by the defendant, but plaintiffs did not rely upon these statements in refraining from filing a claim. Tucker responded to Houlihan's letter by indicating that he planned to file a complaint against the Service for racial discrimination. (Compl.¶ 26.) Moreover, Tucker summarized Houlihan's letter as no promise at all to black agents because Houlihan essentially promised to back the supervisors whether they were right or wrong.[2] (*Id.*) The promise by Magaw to Webb in the early 1990s and the 1998 meeting between Webb and Bowen are also insufficient for plaintiffs' equitable argument to prevail. Plaintiffs allege no reliance by Webb or any other agents based on Magaw's or Bowen's comments, and Webb has alleged no claims of discrimination in this case.

Plaintiffs do not allege any affirmative misconduct by the defendant that plaintiffs relied upon that prevented or discouraged plaintiffs from bringing their claims. Therefore, their equitable estoppel argument must fail.[3]

## II. VICARIOUS EXHAUSTION

■ Under the doctrine of vicarious exhaustion, a Title VII plaintiff who has failed to file an EEO charge may, under some circumstances, join his claim with that of another plaintiff who has filed properly an EEO charge. *See Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C.Cir.1981). A plaintiff may invoke the doctrine of vicarious exhaustion only if one plaintiff actually has exhausted his claims and if the exhausted claims are so similar to the unexhausted claims that "it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges ...." *Id.* A timely non-promotion class claim will vicariously exhaust claims that involve discrimination in the building blocks of promotion. *Contreras v. Ridge*, 305 F.Supp.2d 126 (D.D.C.2004) (holding that "any EEOC investigation of [a] denial of promotions claim would necessarily involve investigation into the building blocks of promotion[,]" and so the claims concerning such discrimination could be vicariously exhausted by the non-promotion class claim).

■ Here, there is no dispute that Turner has administratively exhausted his EEOC non-promotion class complaint. Consequently, plaintiffs' class claims relating to discriminatory performance evaluations; discriminatory transfers, assignments, and other career enhancing opportunities; discriminatory assignment to undercover work; discriminatory hiring practices; discriminatory testing; discriminatory disciplinary policies and

**2.** In addition, Tucker was named as a victim in a 1989 class complaint against the Service for racial discrimination. (Def.'s Mot. to Dismiss, Ex. Al at 8, ¶ 28.)

**3.** Plaintiffs' argument that the October 24 Opinion forever estopped defendant from arguing untimeliness is incorrect. The Opinion simply recognized that judging the complaint on its face before any discovery had been undertaken, its allegations about defendant's assurances—while "fairly thin support" for an equitable estoppel argument—precluded any conclusion that no set of facts could be proven to support such an argument for purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (October 24 Opinion at 27–28.) In any event, the estoppel discussion in the Opinion regarding whether certain individual claims should be dismissed was dictum coming as it did after the Opinion had already held that those individual claims should be dismissed. The dictum discounting defendant's attack on plaintiffs' estoppel argument at the pleading stage in connection with those individual claims was unnecessary to the decision already made to dismiss them.

practices; and discriminatory awards and bonuses can be deemed vicariously exhausted by Agent Turner's class complaint. The October 24 Opinion is not to the contrary. The Opinion explained that based on Reginald Moore's individual complaint, the other individual claims alleging other forms of discrimination—discrimination in hiring, performance evaluations, and testing, hostile work environment, retaliation, and discriminatory assignment claims—were "not the kinds of claims that the Secret Service could have reasonably anticipated while investigating Reginald Moore's 1999 complaint." (October 24 Opinion at 25–26.) The opinion reasoned that the various forms of discrimination alleged by plaintiffs had only the "generic thread of racial discrimination tying them together." (*Id.* at 25.) The facts of Reginald Moore's non-promotion claim did not implicate the building blocks of promotion because his claim asserted non-promotion in spite of a high performance evaluation. An investigation of his complaint would not necessarily have involved examining the building blocks of promotion. However, now, as in *Contreras,* plaintiffs' class complaint of non-promotion implicates the building blocks of promotion.

### III. MOTION TO AMEND THE COMPLAINT

■ In light of this discussion of the October 24 Opinion, plaintiffs' motion to amend the complaint will be granted in part and denied in part. Plaintiffs' pre–1999 claims will be disallowed for failure to timely file them with the Secret Service, and because plaintiffs failed to present sufficient facts to support their equitable estoppel argument. Plaintiffs' non-promotion class allegation and the class claim

concerning discrimination in the building blocks of promotion will be allowed.[4]

■ Plaintiffs also seek to add the Department of Treasury as a defendant. Plaintiffs argue that because the Homeland Security Act was not meant to affect pending civil litigation and because they would be prejudiced by having to serve third-party subpoenas on Treasury because of the burden of complying with its *Touhy* regulations, *see* 31 C.F.R. § 1.11, they should be allowed to add the Treasury Secretary as a named defendant. (Pls.' Reply at 14–17.) These arguments are unpersuasive. The proper defendant in a Title VII suit against a federal agency is the head of the department. 42 U.S.C. § 2000e–16(c). Substituting the Secretary of the Department of Homeland Security for the Secretary of the Treasury did not run afoul of the Homeland Security Act because this civil litigation has not been impeded by the substitution. The Treasury Department will not be added as a defendant.

Finally, plaintiffs will be directed to refile an amended complaint in conformity with this Opinion no later than May 1, 2006.

### CONCLUSION AND ORDER

Plaintiffs' motion to clarify the October 24 opinion will be granted. Plaintiffs' pre–1999 class claims are untimely. Plaintiffs have not produced facts demonstrating affirmative misconduct by the defendant relied upon by the plaintiffs that prevented or discouraged plaintiffs from bringing their pre–1999 claims timely. The doctrine of vicarious exhaustion with respect to a timely class claim of non-promotion is broad enough to encompass forms of discrimination that affect the

---

4. Defendant's argument that the amendment would prejudice him and that plaintiffs' delayed filing their motion to amend lacks merit.

building blocks of promotion. Therefore, plaintiffs' remaining class claims regarding discriminatory performance evaluations; discriminatory transfers, assignments, and other career-enhancing opportunities; discriminatory assignment to undercover work; discriminatory hiring practices; discriminatory testing; discriminatory disciplinary policies and practices; and discriminatory awards and bonuses can be deemed vicariously exhausted by their now properly exhausted non-promotion class claim. Accordingly, it is hereby

ORDERED that plaintiffs' motion [132] to clarify the October 24 Opinion be, and hereby is, GRANTED, and the clarification sought is provided above. It is further

ORDERED that plaintiffs' motion [155] to amend the complaint be, and hereby is, GRANTED in part and DENIED in part. Plaintiffs' pre–1999 class claims are untimely and may not be pled. Plaintiffs' class allegations concerning the building blocks of promotion are deemed vicariously exhausted by Agent Turner's non-promotion class claim and may be pled. Plaintiff shall refile an amended complaint in conformity with this opinion no later than May 1, 2006. It is further

ORDERED that plaintiffs' motion [257] for a hearing be, and hereby is, DENIED as moot. It is further

ORDERED that plaintiffs' February 3, 2006 motion [288] for clarification be treated as a discovery dispute, and hereby is REFERRED to the magistrate judge.[5]

---

5. What claims remain in this case and what the proper scope of discovery is concerning those claims are two separate issues.